1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10

11   JOSE TELLO RAMON,              )      No. EDCV 07-1541-RC
                                    )
12            Plaintiff,            )
                                    )      OPINION AND ORDER
13        v.                        )
                                    )
14   MICHAEL J. ASTRUE,             )
     Commissioner of Social Security, )
15                                  )
              Defendant.            )
16   _____)

17

18        Plaintiff Jose Tello Ramon filed a complaint on December 7, 2007,

19   seeking review of the Commissioner's decision denying his application

20   for disability benefits.  The Commissioner answered the complaint on

21   April 21, 2008, and the parties filed a joint stipulation on June 11,

22   2008.

23

24                            **BACKGROUND**

25                                **I**

26        On February 18, 2003 (protective filing date), plaintiff applied

27   for disability benefits under the Supplemental Security Income program

28   ("SSI") of Title XVI of the Social Security Act ("the Act"), 42 U.S.C.

§ 1382(a), claiming an inability to work since January 1, 2000, due to hypothyroidism, diabetes mellitus, vision difficulties, and back pain. Certified Administrative Record ("A.R.") 71-74, 84.  The plaintiff's application was initially denied on June 13, 2003, and was denied again on July 23, 2003, following reconsideration.  A.R. 28-38.  The plaintiff then requested an administrative hearing, which was held on September 1, 2005, before Administrative Law Judge F. Keith Varni ("the ALJ").  A.R. 39-41, 49-51, 160-71.  On November 3, 2005, the ALJ issued a decision finding plaintiff is not disabled.[1]  A.R. 11-19. The plaintiff appealed this decision to the Appeals Council, which denied review on February 2, 2006.  A.R. 6-10.

The plaintiff then filed a civil complaint challenging the Commissioner's decision:  Ramon v. Astrue, case no. EDCV 06-0191-RC ("Ramon I").[2]  On September 7, 2006, pursuant to the parties' stipulation, judgment was entered remanding the application for further proceedings under sentence four, 42 U.S.C. § 405(g).  A.R. 203-09.  On July 25, 2007, the ALJ held a new administrative hearing,[3] A.R. 478-84, and on August 29, 2007, the ALJ issued a decision again finding plaintiff is not disabled.  A.R. 172-84.

---

[1]  On November 23, 2005, plaintiff reapplied for SSI benefits, claiming disability since March 13, 2003, due to cirrhosis, diabetes, thyroid problems, and high blood pressure. A.R. 225-28, 231-37.  This application was denied on March 9, 2006, and was denied again on January 22, 2007, following reconsideration.  A.R. 213-24.

[2]  Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of all documents in Ramon I.

[3]  The new administrative hearing addressed both plaintiff's initial application and his 2005 application.  A.R. 178-84.

## II

The plaintiff, who was born on November 5, 1939, is currently 69 years old.  A.R. 72, 225, 231.  He has a third-grade education and cannot read, write or speak English.  A.R. 83, 87.  He has previously worked repairing pallets.  A.R. 84-85, 90-92.

Since March 25, 2003, plaintiff has received treatment at the Rialto Clinica Medica Familiar, where Ruben Ruiz, M.D., diagnosed plaintiff with lower back pain, renal insufficiency, diabetes mellitus, hypothyroidism, hypertension, and peripheral neuropathy, among other conditions.  A.R. 115-46, 366-449.  On December 8, 2005, plaintiff's diabetes was uncontrolled, and he was placed off work through December 31, 2005.  A.R. 410.  On July 31, 2006, Dr. Ruiz opined plaintiff was permanently incapacitated due to congestive heart failure,[4] diabetes mellitus complicated by congestive heart failure, retinopathy,[5] and hypertension.  A.R. 409.

On June 12, 2003, Bahaa B. Girgis, M.D., examined plaintiff and diagnosed him with type II diabetes mellitus with no evidence of diabetic retinopathy or neuropathy, decreased right eye visual acuity,

---

[4]  Congestive heart failure is "a clinical syndrome due to heart disease, characterized by breathlessness and abnormal sodium and water retention, often resulting in edema [the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body].  The congestion may occur in the lungs or peripheral circulation or both, depending on whether the heart failure is right-sided or general."  Dorland's Illustrated Medical Dictionary at 567, 650.

[5]  Diabetic retinopathy is a degenerative condition of the retina associated with diabetes mellitus.  Id. at 1567.

3

which was 20/200 due to glaucoma, and a history of hypertension and chronic liver disease.  A.R. 112-14.  Dr. Girgis opined plaintiff can occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to up to 25 pounds, and can stand/walk and sit for 6 hours each in an 8-hour day.  A.R. 114.

On June 23, 2004, Alvin Chang, M.D., examined plaintiff at the Arrowhead Regional Medical Center, where he diagnosed plaintiff with Type II diabetes mellitus under moderate control, stable congestive heart failure, stable hypertension, stable hypothyroidism and obesity, among other conditions, and referred plaintiff to a podiatrist.  A.R. 308-10.  On June 29, 2004, Sang D. Lee, D.P.M., a podiatrist, examined plaintiff and diagnosed him as having diabetes mellitus with neuropathy and ankle joint pain.  A.R. 307.  Dr. Lee continued to treat plaintiff, diagnosing him at various times with degenerative joint disease, left foot cellulitis, plantar fasciitis, gout, and Morton's neuroma,[6] among other conditions.  A.R. 293-306, 355-65. Nerve conduction velocity studies obtained on January 15, 2007, were consistent with mild sensory peripheral neuropathy and demyelination pathology consistent with a history of diabetes mellitus.  A.R. 355-60.

On February 21, 2006, Kimberley R. Clements, M.D., examined plaintiff and diagnosed him with complaints of back, knee and feet

---

[6]  Morton's neuroma is "the neuroma [a tumor growing from a nerve or made up largely of nerve cells and nerve fibers] that results from Morton's neuralgia[,]" which is "a form of foot pain, metatarsalgia caused by compression of a branch of the plantar nerve by the metatarsal heads. . . ."  Id. at 1206, 1211.

4

1    pain and bad vision.  A.R. 280-85.  Plaintiff's vision without
2    correction was less than 20/200 in his right eye and 20/30 in his left
3    eye, but with pinhole correction, it was 20/100 in his right eye and
4    20/40 in his left eye.  A.R. 286.  Dr. Clements opined plaintiff can
5    occasionally lift 50 pounds, frequently lift 25 pounds, sit without
6    limitation, stand and walk for 6 hours in an 8-hour day, and push and
7    pull without limitation.  A.R. 284.

8

9        On December 28, 2006, Nicholas N. Lin, M.D., examined plaintiff
10   and concluded plaintiff can: occasionally lift and/or carry up to 50
11   pounds; frequently lift and/or carry up to 25 pounds, bend, stoop,
12   crouch, kneel, and climb stairs; stand or walk for 6 hours in an 8-
13   hour workday with appropriate breaks; and sit for 6 hours in an 8-hour
14   workday.  A.R. 320-26.  A visual acuity test was 20/100 in both eyes,
15   less than 20/200 in both eyes tested individually and in the right eye
16   with pinhole correction, and 20/200 in the left eye with pinhole
17   correction.  A.R. 326.

18

19       On April 6, 2007, Sean S. To, M.D., an internist, examined
20   plaintiff and diagnosed him as having advanced diabetes with evidence
21   of retinopathy, peripheral neuropathy, nephropathy and leg ulcers,
22   back pain with marked tenderness in the lumbosacral area and decreased
23   range of motion, and mild joint pain.  A.R. 450-61.  Plaintiff's
24   visual acuity was 20/100 in both eyes, 20/200 in the right eye and
25   20/100 in the left eye, both before and after pinhole correction.
26   A.R. 455.  Dr. To concluded plaintiff: can never lift and/or carry
27   greater than 20 pounds; can occasionally lift and/or carry up to up to
28   20 pounds; can frequently lift and/or carry up to 10 pounds; can sit

for 4 hours at a time and 6 hours in an 8-hour day; can stand for two
hours at a time and 4 hours in an 8-hour day; can walk for 1 hour at a
time and 2 hours in an 8-hour day; can continuously use his hands and
arms; can occasionally operate foot controls, climb stairs, balance,
stoop, kneel, crouch, crawl, work in humidity and wetness, work around
dust, odors, fumes and pulmonary irritants, work in extreme cold or
heat, and work around vibrations; can never work at unprotected
heights, around moving mechanical parts, or operate a motor vehicle;
and can tolerate exposure to moderate noise.[7]   A.R. 456-61.


**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
review the Commissioner's decision denying plaintiff disability
benefits to determine if his findings are supported by substantial
evidence and whether the Commissioner used the proper legal standards
in reaching his decision.  <u>Sam v. Astrue</u>, 550 F.3d 808, 809 (9th Cir.
2008) (per curiam); <u>Vasquez v. Astrue</u>, 547 F.3d 1101, 1104 (9th Cir.
2008).

---

[7]   The medical record also contains a "Medical Opinion Re:
Ability to Do Work-Related Activities," dated January 9, 2007,
which sets forth several severe limitations for plaintiff.  A.R.
475-77.  Unfortunately, the signature on this form is illegible,
and neither plaintiff nor the ALJ identified who signed the form.
A.R. 184, 474.  The ALJ gave the form "no weight" because: it is
a "check-list form [that] is not accompanied by a physical
examination"; "there is no way to tell who signed the statement";
"[t]he form is no more than a parroting of the claimant's
subjective complaints"; and the form "is not consistent with the
treatment record or the findings of the medical sources. . . ."
A.R. 184.  Since plaintiff does not challenge the ALJ's findings,
the Court will not further discuss this document.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. § 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. § 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

//

7

1  Applying the five-step sequential evaluation process, the ALJ
2  found "no credible evidence that [plaintiff] ever ceased engaging in
3  substantial gainful activity[,]" but nevertheless did not deny the
4  claim based on substantial gainful activity.  (Step One).   The ALJ
5  then found plaintiff has the severe impairments of: diabetes;
6  glaucoma; hypertension; and a degree of renal insufficiency (Step
7  Two); however, he does not have an impairment or combination of
8  impairments that meets or equals a Listing.  (Step Three).   The ALJ
9  next determined plaintiff can perform his past relevant work as a
10 recycling helper or pallet maker; therefore, he is not disabled.
11 (Step Four).

12

13                                   **IV**

14  A claimant's residual functional capacity ("RFC") is what he can
15 still do despite his physical, mental, nonexertional, and other
16 limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
17 Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).   Here,
18 the ALJ found plaintiff has the RFC to perform a full range of medium
19 work.[8]  A.R. 181.   However, plaintiff contends the ALJ's RFC
20 determination is not supported by substantial evidence because, among
21 other things, the ALJ erroneously rejected the opinions of examining
22 physician Dr. To.   The plaintiff is correct.

23

24  The ALJ must provide "clear and convincing" reasons for rejecting
25

26  _____

27  [8]  Under Social Security regulations, "[m]edium work
    involves lifting no more than 50 pounds at a time with frequent
    lifting or carrying of objects weighing up to 25 pounds."   20
28  C.F.R. § 416.967(c).

1   the uncontradicted opinion of an examining physician, <u>Widmark v.</u>
2   <u>Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if
3   contradicted by another doctor, the opinion of an examining doctor can
4   be rejected only for specific and legitimate reasons that are
5   supported by substantial evidence in the record." <u>Regennitter v.</u>
6   <u>Comm'r of the Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298-99 (9th Cir.
7   1999).

8

9        As set forth above, Dr. To opined, among other things, that
10  plaintiff cannot perform medium work, as he can: never lift and/or
11  carry greater than 20 pounds; occasionally lift and/or carry up to up
12  to 20 pounds; frequently lift and/or carry up to 10 pounds; sit for 4
13  hours at a time and 6 hours in an 8-hour day; stand for two hours at a
14  time and 4 hours in an 8-hour day; and walk for 1 hour at a time and 2
15  hours in an 8-hour day.  A.R. 456-61.  Here, the ALJ failed to
16  explicitly address Dr. To's opinions, and in determining plaintiff has
17  the RFC to perform medium work, implicitly rejected his opinions.
18  This was clear legal error.  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,
19  1038 n.10 (9th Cir. 2007); <u>Smolen</u>, 80 F.3d at 1286.

20

21        Nevertheless, the Commissioner contends the ALJ's error was
22  harmless because Dr. To rendered his opinions after plaintiff turned
23  65 and was no longer eligible for SSI disability benefits.  Jt. Stip.
24  at 4:9-6:1.  The Court disagrees.  For an error to be harmless, it
25  must be "clear from the record that the ALJ's error was
26  inconsequential to the ultimate nondisability determination."
27  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations
28  and internal quotation marks omitted).  Here, because "the ALJ's error

1   in rejecting [Dr. To's] opinion ultimately led to an adverse

2   disability finding, it was not harmless." Widmark v. Barnhart, 454

3   F. 3d 1063, 1069 n.4 (9th Cir. 2006).  In other words, due to the

4   ALJ's legal error, plaintiff may have been deprived of SSI disability

5   benefits for a period of time before he turned 65;[9] thus, the ALJ's

6   legal error clearly is not harmless error.  Cf. Lingenfelter, 504 F.3d

7   at 1033-34 n.3 ("'[R]eports containing observations made after the

8   period for disability are relevant to assess the claimant's

9   disability.'" (citation omitted)).  Since it was "legal error for the

10  ALJ to discount the opinions of [Dr. To] without providing specific

11  and legitimate reasons for doing so[,]" the ALJ's RFC assessment, and

12  Step Four determination, are not supported by substantial evidence.

13  Lingenfelter, 504 F.3d at 1038 n.10; Aukland v. Massanari, 257 F.3d

14  1033, 1037 (9th Cir. 2001).

15

16                                  V

17      When the Commissioner's decision is not supported by substantial

18  evidence, the Court has authority to affirm, modify, or reverse the

19  Commissioner's decision "with or without remanding the cause for

20  rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

21  1076 (9th Cir. 2002).  "Remand for further administrative proceedings

22  is appropriate if enhancement of the record would be useful." Benecke

23  _____

24      [9]  At the most recent administrative hearing on July 25,
25  2007, plaintiff's attorney stated plaintiff, who was then more
    than 65, was receiving SSI old-age benefits.  A.R. 480-81; see
26  also Ly v. Sec'y of Health & Human Servs., 629 F. Supp. 1181,
    1182 (E.D. Mich. 1986) ("Under the Social Security Act, an
27  individual who reaches the age of 65 and [meets the] income [and
    residency requirements] is entitled to supplemental security
28  income.").

1  v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, remand is

2  appropriate so the ALJ can properly consider Dr. To's opinions.[10]

3  Widmark, 454 F.3d at 1070; Bunnell v. Barnhart, 336 F.3d 1112, 1116

4  (9th Cir. 2003).

5

6                                **ORDER**

7       IT IS ORDERED that: (1) plaintiff's request for relief is granted

8  and defendant's request for relief is denied; and (2) the

9  Commissioner's decision is reversed, and the action is remanded to the

10  Social Security Administration for further proceedings consistent with

11  this Opinion and Order, pursuant to sentence four of 42 U.S.C. §

12  405(g), and Judgment shall be entered accordingly.

13

14  DATE:  February 19, 2009          /s/ Rosalyn M. Chapman
                                      ROSALYN M. CHAPMAN
15                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25  _____

26       [10]  Having reached this conclusion, it is unnecessary to
    reach the other claims plaintiff raises, none of which warrant
27  any further relief than herein granted.

28  R&R-MDO\07-1541.mdo
    2/19/09

                                 11